# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DAVID STEVEN BRAUN,** <br><br> Plaintiff, <br><br> v. <br><br> **FEDERAL BUREAU OF INVESTIGATION,** *et al.*, <br><br> Defendants. | Case No. 18-cv-2145 (CRC) |

## MEMORANDUM OPINION

Countless attention seekers have falsely claimed to be CIA agents. David Steven Braun, on the other hand, insists he has *never* worked for the agency but suspects that a government database entry says otherwise. This record, Mr. Braun claims, has caused him to suffer various adverse employment actions and instances of harassment over the years. Seeking to unearth and correct this purported record, Braun has made a series of requests to the CIA and the FBI pursuant to the Freedom of Information Act and the Privacy Act. He also seeks records regarding his late father, Harvey Allen Braun, whose suicide he attributes to a similar database entry in the government's files.

In response to Braun's requests, each agency searched its files and informed him that no relevant records had been located. Where the requested searches implicated material classified for law enforcement or national security purposes, each agency issued a so-called Glomar response—*i.e.*, a response that neither confirms nor denies the existence of responsive records. Unsatisfied, Braun has sued the agencies *pro se*, insisting that responsive records exist and claiming damages for the wrongful death of his father. Each party has moved for summary

judgment. Because the FBI and the CIA have adequately responded to Braun's requests, the Court will grant their motion and deny Braun's.

I.     Background

Braun believes the CIA or FBI has a "database point represent[ing] that [he] currently or at one time did work for the Agency." Compl., ECF No. 1, at 2. He attributes a string of adverse life events to this purported record, alleging it "has prevented [him] from gaining employment at countless jobs," and "caused companies not to promote [him] and to limit [his] salary and Year end bonuses." Id. He also claims that it has led him to be victimized by vandalism, attempted break-ins, and druggings at restaurants near his Montana home. Pl.'s Resp. to Reply to MSJ ("Resp. to Reply"), ECF No. 21, at 2. Braun believes that the FBI has a similar database entry for his father, Harvey Braun, which limited his father's salary, prevented him from finding employment, and ultimately "forc[ed] him to take his own life." Compl. at 8–9.

Braun has filed and unsuccessfully litigated several FOIA and Privacy Act requests with a variety of agencies seeking to remove or correct this suspected database entry. See, e.g., Braun v. USPS, No. 16-2079, 2017 WL 4325645 (D.D.C. Sept. 27, 2017); Braun v. FBI, No. 16-00040, 2017 WL 496059 (D. Mont. February 7, 2017); Braun v. NSA, No. 15-01266 (D.D.C). He continues that pattern with this challenge to the adequacy of the FBI and CIA's responses to multiple recent FOIA and Privacy Act requests. Compl. at 9.

Braun filed the first request at issue here with the FBI in August 2016, seeking "any references to [him] being a federal employee" or being "employed [by] any branch [of the] Military, such as the CIA." Compl. Ex. 1, ECF No. 1, at 9.[1] He later lodged several additional

---

[1] The Court will refer to the ECF pagination when referencing exhibits submitted by Braun.

2

FOIA and Privacy Act requests with the FBI seeking records related to his name that "might negatively affect the hiring process," Compl. Ex. 4, ECF No. 1, at 14, or cause him to fail a "civil background check," Compl. Ex. 8, ECF No. 1, at 19. Braun also sought records regarding his late father, including whether the elder Braun had a criminal record or other indications that might affect his ability to find employment. Compl. Exs. 10, 10A, 10B, ECF No. 1, at 24–26.

In response to each of Braun's requests, the FBI searched its Central Records System ("CRS") and manual indices. See Decl. of David M. Hardy ("Hardy Decl."), Def.'s MSJ Ex. 1, ECF No. 16-4, ¶¶ 40–49. Save where the FBI located files already disclosed pursuant to a prior FOIA request, none of the agency's searches located responsive records. Hardy Decl. ¶ 4. To the extent Braun requested information related to "placement on any government watch list," the FBI issued a Glomar response, refusing to "confirm or deny the existence of any records responsive to [his] request" based on FOIA Exemption 7(E) and Privacy Act Exemption (j)(2). Id. ¶¶ 10, 20. Accordingly, the FBI determined that there were no records responsive to Braun's requests, and maintains that it has met its obligations under FOIA and the Privacy Act. Id. ¶ 50.

Braun also submitted several FOIA and Privacy Act requests to the CIA beginning in October 2017. Compl. Ex. 14, ECF No. 1, at 31. These submissions sought medical records, employment records, and other records that might cause him to "fail [a] civil background check." See, e.g., id.; id. Ex. 19, ECF No. 1, at 38. In response to each request, the CIA searched for different combinations of Braun's name in all records that would reveal an open, unclassified, or acknowledged relationship with the agency. See Decl. of Antoinette B. Shiner ("Shiner Decl."), Defs.' MSJ Ex. 2, ECF No. 16-5, ¶¶ 20–21. Where Braun's requested search extended to classified material, the CIA, too, issued a Glomar response, refusing to "confirm the existence or

3

nonexistence of [responsive] records" based on its invocation of FOIA Exemptions 1 and 3, and Privacy Act Exemptions (j)(1) and (k)(1). Id. ¶ 22.

Braun takes issue with each agency's response to his requests. He is certain that database entries on him and his father exist and contends that each agency's search was inadequate, as demonstrated by its failure to identify those records. Accordingly, he asks the Court to conduct an additional review of FBI and CIA files to locate the records. Compl. at 9. Additionally, Braun claims the alleged government record on his father, Harvey Braun, was the cause of his father's suicide. He thus asks the Court to find the CIA and/or the FBI liable for his father's death and award damages of "[$]1,000,000 a month for the rest of [his] life." Id. at 8–10. Both parties have moved for summary judgment, and the matter is ripe for resolution.

## II. Legal Standards

FOIA cases are typically resolved on summary judgment. See Brayton v. Office of U.S. Trade Rep., 641 F.3d 521, 527 (D.C. Cir. 2011). Summary judgment should be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

FOIA requires that an agency conduct an adequate search for responsive records upon request from a member of the public. See Rodriguez v. Dep't of Def., 236 F. Supp. 3d 26, 34 (D.D.C. 2017). While "a requester must reasonably describe the records sought, an agency also has a duty to construe the FOIA request liberally." Nation Magazine, Washington Bureau v. U.S. Customs Serv., 71 F.3d 885, 890 (D.C. Cir. 1995) (alteration, citation, and quotation omitted). The agency "must conduct a 'good faith, reasonable search of those systems of records likely to possess requested records.'" Judicial Watch, Inc. v. U.S. Dep't of Justice, 373 F. Supp.

4

3d 120, 123 (D.D.C. 2019) (quoting Freedom Watch, Inc. v. Nat'l Sec. Agency, 220 F. Supp. 3d 40, 44 (D.D.C. 2016)).

Should a party dispute the adequacy of an agency's search, the agency must show "beyond material doubt that its search was reasonably calculated to uncover all relevant documents." Ancient Coin Collectors Guild v. U.S. Dep't of State, 641 F.3d 504, 514 (D.C. Cir. 2011) (quoting Valencia-Lucena v. U.S. Coast Guard, 180 F.3d 321, 325 (D.C. Cir. 1999)). The reasonableness of a search is determined "not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." Francis v. U.S. Dep't of Justice, 267 F. Supp. 3d 9, 12 (D.D.C. 2017). "An agency may prove the reasonableness of its search through a declaration by a responsible agency official[.]" Judicial Watch, 373 F. Supp. 3d at 123 (quoting Cunningham v. U.S. Dep't of Justice, 40 Supp. 3d 71, 83–84 (D.D.C. 2014)). "Agency declarations, especially from individuals coordinating the search, are afforded a 'presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents.'" Id. (quoting Freedom Watch, 220 F. Supp. 3d at 44). As such, courts may award summary judgment solely based on agency affidavits or declarations that are "relatively detailed and non-conclusory." Id.

### III. Analysis

Braun challenges the adequacy of the FBI and CIA searches and their conclusions that no responsive records exist. Pl.'s Resp., ECF No. 17, at 1. Additionally, he contends that the FBI and CIA have inappropriately issued Glomar responses to his requests. Pl.'s Resp. to Reply, ECF No. 21, at 1. The Court considers each point in turn.

5

A. <u>Adequacy of the Searches</u>

Each agency has detailed the steps of its search in a declaration. The FBI provides a sworn declaration from David M. Hardy, who oversees the Section within the FBI that handles the agency's responses to FOIA and Privacy Act requests. <u>See</u> Hardy Decl. ¶¶ 1–3. Mr. Hardy explains that in response to Braun's requests, the FBI conducted multiple searches of its Central Records System ("CRS") and manual indices, using multiple structural and phonetic variations of Braun's name. <u>Id.</u> ¶¶ 41–42, 46. It also conducted a similar search for files on Harvey Allen Braun, Plaintiff's father. <u>Id.</u> ¶ 47. After Braun filed this suit, the FBI conducted additional searches. <u>Id.</u> ¶¶ 48–49. None of these searches returned any records beyond those already disclosed to Braun in response to a prior FOIA request. <u>Id.</u> ¶ 50.

The CIA, meanwhile, provides a declaration by Antoinette B. Shiner, who heads the office that responds to FOIA and Privacy Act requests submitted to the agency. Shiner Decl. ¶¶ 1, 4. Because Braun's requests implicated employment and medical matters, the CIA searched for existing and previously-released records within both its Directorate of Operations and Directorate of Support. <u>Id.</u> ¶¶ 20–21. Like the FBI, the CIA searched for different combinations of Braun's name. <u>Id.</u> ¶ 19. Pursuant to its regulations, the CIA limited its searches to records that would reveal an open, unclassified, or acknowledged relationship with Braun. <u>Id.</u> ¶ 19. Those searches located no responsive records. <u>Id.</u> ¶ 21.

Braun challenges these searches, contending that the employment difficulties and other personal woes he has experienced could only be due to a "database entry" in the agencies' records. Pl.'s Resp. to Reply at 2. Therefore, he insists, that record must exist, and the agencies' inability to locate it evinces inadequate searches. <u>Id.</u>

But "purely speculative claims about the existence and discoverability of other documents" are insufficient to rebut the presumption of good faith accorded to agency declarations. SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir 1991). Where the agency has provided sufficiently detailed affidavits, courts require "concrete, specific challenges to the sufficiency of [an agency's] search in order to deny the agency summary judgment." Competitive Enter. Inst. v. EPA, 12 F. Supp. 3d 100, 111 (D.D.C. 2014). Braun's recitation of a long list of unfortunate life events that he attributes to the agencies' records, while no doubt sincere, does not constitute the "concrete evidence" required to undermine the adequacy of either agency's searches. Negley v. U.S. Dep't of Justice, 305 F. Supp. 3d 36, 45–46 (D.D.C. 2018). Rather, Braun's "belie[f] [that] the agency is to blame for these harms (and that there thus must exist more files on [him])" amounts only to "[m]ere speculation that . . . does not undermine the finding that the agency conducted a reasonable search." Id. at 46. Accordingly, based on the detailed affidavits submitted by each agency, the Court finds the searches were adequate.

B. Glomar Responses

Braun also suggests that records regarding him and his father exist but have been "potentially miss classified [sic]," and inappropriately withheld under the exemptions established in FOIA and the Privacy Act. See Pl.'s Resp. at 1. He specifically takes issue with each agency's use of Glomar responses. Id. at 2. A Glomar response by an agency is proper where "confirming or denying the existence of records would itself 'cause harm cognizable under an FOIA exemption.'" Roth v. U.S. Dep't of Justice, 642 F.3d 1161, 1178 (D.C. Cir. 2011) (quoting Wolf v. CIA, 473 F.3d 370, 374 (D.C. Cir. 2007)). A similar option is available under the Privacy Act. See Hillier v. CIA, No. 16-1836, 2018 WL 4354947, at *9 (D.D.C. Sept. 12, 2018).

7

As an initial matter, Braun insists that if the agency's searches identified no relevant documents, they would say as much. Pl.'s Resp. to Reply at 1. But this misunderstands how Glomar responses operate. Take, for example, the FBI's response to his first FOIA request: "By standard FBI practice and pursuant to FOIA exemption (b)(7)(E) and Privacy Act exemption (j)(2) . . . this response neither confirms nor denies the existence of [Braun's] name on any watch lists." Compl. Ex. 2A, ECF No. 1, at 11. It was accompanied by an explanation that the Glomar language is a "standard notification given to *all* [] requesters and should not be taken as an indication that excluded records do, or do not, exist." Id. (emphasis added). To Braun's understanding, this response "admitt[ed] to finding such records but declin[ed] to furnish them. Compl. at 3. Because his requests were not "simp[ly] denied," Braun believes the agencies' Glomar responses were "fabricated or misleading" and further substantiate his theory that "misleading data base entries" exist. Pl.'s Resp. at 2.

Not so. Agencies must issue such responses in all cases where requests implicate classified information—whether or not responsive records exist. See Shiner Decl. ¶ 33; Hardy Decl. Ex. 1M. Otherwise, a Glomar response would do no good at all. Braun's proposed approach of providing denials where no relevant records exist would render Glomar responses useless, making them *de facto* admissions that records exist. Consequently, while frustrating for Braun, agencies must issue Glomar responses when searches implicate protected material. Therefore, both the FBI and the CIA's categorical Glomar policies prevent Braun from obtaining the simple denial he seeks.

Of course, an agency may not invoke Glomar willy-nilly. It must "tether its refusal to respond . . . to one of the nine FOIA exemptions" or exemptions under the Privacy Act. Montgomery v. IRS, 330 F. Supp. 3d 161, 168 (D.D.C. 2018) (quoting Wilner v. NSA, 592 F.3d

8

60, 68 (2d Cir. 2009)). Again, it may do so through affidavits that describe its withholdings in "specific detail, demonstrat[ing] that the information withheld logically falls within the claimed exemption." ACLU v. Dep't of Def., 628 F.3d 612, 619 (D.C. Cir. 2011). Each agency did precisely that here.

*1. FBI Exemptions*

The FBI provided a Glomar response to the extent Braun's requests implicated information about any individual's placement on a government watch list. See Hardy Decl. ¶ 10, 20. It tethers its response to FOIA Exemption 7(E) and Privacy Act Exemption (j)(2). Id.

FOIA Exemption 7(E) protects from disclosure law enforcement records related to "techniques and procedures for law enforcement investigations or prosecutions," where "such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). "[W]here an agency specializes in law enforcement, its decision to invoke Exemption 7 is entitled to deference." Barnard v. Dep't of Homeland Sec., 598 F. Supp. 2d 1, 14 (D.D.C. 2009). "Satisfying [Exemption 7(E)] is a 'relatively low bar' in this Circuit." Bigwood v. Dep't of Def., 132 F. Supp. 3d 124, 152 (D.D.C. 2015) (quoting Blackwell v. FBI, 646 F.3d 37, 42 (D.C. Cir. 2011)).

The FBI maintains it is "reasonably foreseeable that confirming or denying an individual's placement on any government watch list would harm the interests protected by [Exemption 7(E)]." Hardy Decl. Ex. 1P. Kalu v. IRS, 159 F. Supp. 3d 16 (D.D.C. 2016), demonstrates this reasoning. See Hardy Decl. Ex. 1P. In Kalu, a fellow court in this district upheld an FBI Glomar response predicated on Exemption 7(E) where a requester sought information regarding her presence on TSA and FBI watch lists. 159 F. Supp. 3d. at 19. There, the court explained that "anything other than a 'neither confirm nor deny' response would tend to

9

disclose at the very least 'guidelines for law enforcement investigations or prosecutions' and that such disclosure 'could reasonably be expected to risk circumvention of the law.'" Id. at 23 (citations omitted).

Braun's request for records regarding his presence on a watch list raises the same problems that were present in Kalu. The FBI cannot reveal if Braun is on its watch list without giving away information that might tip off those on the watch list or aid those who seek to avoid being placed on it. Should the FBI abandon its "even-handed Glomar response," and provide Braun with a specific answer to his request, it would risk placing "more information [regarding the watch list] in the public domain from which individuals could inductively piece together" FBI enforcement guidelines with the aim of circumventing the law. Id. Therefore, while the agency's justifications for Exemption 7(E) in this case are brief, they suffice. Braun offers no evidence to challenge the sufficiency of the FBI's affidavits or to demonstrate bad faith. The FBI's response is sufficient to justify the Exemption and corresponding Glomar response.

Exemption (j)(2) of the Privacy Act "protects from mandatory disclosure systems of records 'maintained by an agency or component thereof which performs as its principal function any activity [pertaining] to the enforcement of criminal law[.]'" Dutton v. U.S. Dep't of Justice, 302 F. Supp. 3d 109, 127 (D.D.C. 2018) (quoting 5 U.S.C. § 552a(j)(2)). To claim this exemption agencies may promulgate rules to exempt systems from provisions of the Act. Id. (citing 5 U.S.C. § 552a(j)). The FBI avers that "even if [it] possessed records responsive to [Braun]'s request," those records would have been "exempt from amendment or correction," because they were "maintained in the FBI's CRS and thus compiled as a result of the FBI's fulfillment of its law enforcement duties." Hardy Decl. ¶ 45. The FBI indicates correctly that its

CRS is expressly "exempt from amendment and correction" pursuant to rules promulgated by its Director. Hardy Decl. ¶ 45; see 28 C.F.R. § 16.96.

Because Braun advances no argument or evidence suggesting that the alleged records were not maintained in the CRS, and thus subject to disclosure or amendment, he has not rebutted the agency's declarations. The FBI is therefore entitled to summary judgment.

2. *CIA Exemptions*

Where Braun's requests implicated classified records within the CIA, the agency provided a Glomar response predicated on FOIA Exemptions 1 and 3, and Privacy Act Exemptions (j) and (k).

FOIA Exemption 1 covers records "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and . . . in fact properly classified pursuant to such Executive Order." 5 U.S.C. § 552(b)(1). When dealing with issues of national security, courts afford substantial deference to the agency, and "must sustain an agency's Glomar response predicated on a FOIA exemption when the justification for nondisclosure appears logical or plausible." Shapiro v. CIA, 170 F. Supp. 3d 147, 158 (D.D.C. 2016) (internal quotation marks omitted) (citing ACLU v. CIA, 710 F.3d 422, 427 (D.C. Cir. 2013)). Moreover, where an agency avers that disclosure would cause harm to national security, courts "have consistently deferred to executive affidavits . . . and have found it unwise to undertake searching judicial review." DiBacco v. Dep't of the Army, 926 F.3d 827, 835 (D.C. Cir. 2019) (quoting Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice, 331 F.3d 918, 927 (D.C. Cir. 2003) (internal quotation marks omitted)).

The Court will first address the CIA's asserted FOIA exemptions, and then consider its Privacy Act exemptions. In support of its withholding under Exemption 1, the CIA invokes

11

Executive Order 13,526, the operative authority governing classification of national security information. Assoc. Press v. FBI, 265 F. Supp. 3d 82, 93 (D.D.C. 2017); see also Exec. Order No. 13,526, 75 Fed. Reg. 707, 707 (Dec. 29, 2009). The CIA provides a declaration detailing the national security interest implicated by these records, which conforms to the specifications of the Executive Order. See Shiner Decl. ¶¶ 27–33. For his part, Braun advances no specific arguments challenging the sufficiency of the CIA's declaration, which carries a presumption of good faith. See, e.g., Elect. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec., 117 F. Supp. 3d 46, 60 (D.D.C. 2015). Accordingly, the Court finds the CIA properly invoked Exemption 1.

Equally straightforward is the CIA's invocation of Exemption 3, covering records "specifically exempted from disclosure by statute." 5 U.S.C. § 552(b)(3). Here, the CIA relies on § 102A(i)(1) of the National Security Act—which requires the Director of National Intelligence to "protect intelligence sources and methods from unauthorized disclosure"—as the statutory mandate that "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue." Shiner Decl. ¶¶ 35–36 (quoting 50 USC § 3024(i)(1) and 5 U.S.C. § 552(b)(3)). "It is well established that [§ 102A(i)(1)] qualifies as an Exemption 3 withholding statue." Willis v. NSA, No. 17-2038, 2019 WL 1924249, at *8 (D.D.C. Apr. 30, 2019); see also Assoc. Press, 265 F. Supp. 3d at 97 (observing that "[§ 102A(i)(1)] presents an easier hurdle for the agency under Exemption 3 than does Executive Order 13,526 under Exemption 1").

Braun again fails to advance any arguments beyond a general allegation that the CIA's Glomar responses were "fabricated or misleading" given his insistence that the requested database entries must exist. Pl.'s Resp. at 2. "This theory of bad faith is far too speculative to justify disregarding the declarations produced by the CIA that explain why Exemption 3 and the

National Security Act warranted the challenged [withholdings]." DiBacco, 926 F.3d at 836. Accordingly, the CIA properly invoked Exemption 3.

Finally, the CIA's invocation of Exemptions (j) and (k) under the Privacy Act are also proper. Exemption (j)(1) is a corollary to FOIA Exemption 3, and expressly permits the head of the CIA to promulgate rules exempting records from disclosure pursuant to the act. Wheeler v. CIA, 271 F. Supp. 2d 132, 138 (D.D.C. 2003); see also 5 U.S.C. § 552a(j)(1). Exemption (k)(1) allows heads of agencies to promulgate rules exempting systems of records from disclosure if those records are also subject to FOIA Exemption 1. The Director of the CIA has promulgated rules exempting from the access provisions of the Privacy Act those records pertaining to intelligence sources and methods, see 32 C.F.R. § 1901.62(d)(1) (Exemption (j)(1)), and classified intelligence sources and methods, see id. § 1901.63(a) (Exemption (k)(1)). To support its withholdings, the CIA avers both that the systems of records are properly classified under Executive Order 13,526, and that disclosure would implicate intelligence sources and methods. Shiner Decl. ¶¶ 23–24 (Exemption (j)(1)), 25–26 (Exemption (k)(1)). In return, Braun makes no specific points disputing the classification of the records, nor challenging the CIA's assertion that disclosure would implicate intelligence sources and methods. As discussed above, this is insufficient to rebut the credibility of the CIA's rationale for claiming both exemptions.

In sum, Braun's conclusory allegations represent neither the "contrary evidence in the record" nor the "evidence of the agency's bad faith" sufficient to rebut an agency's detailed affidavits. ACLU v. Dep't of Def., 628 F.3d at 619. As the Court has found the agency's affidavits sufficient to justify their claimed exemptions, the Court will grant summary judgment in favor of the FBI and the CIA.

C. <u>Wrongful Death Claim</u>

In addition to his claims seeking the disclosure and amendment of documents, Braun also asks the Court to find the government liable for the wrongful death of his father and order the government pay him "[$]1,000,000 a month for the rest of [his] life." Compl. at 8–9, 10; Pl.'s Resp. at 2. Braun invokes Privacy Act provisions that allow for the recovery of "actual damages sustained by the individual as a result of [an agency's] refusal or failure" to comply with its obligations. 5 U.S.C. § 552a(g)(4); <u>see</u> Compl. at 10. But any recovery is predicated on a court finding that "the agency acted in a manner which [] intentional[ly] or willful[ly]" violated the act and caused harm to the individual. <u>Id.</u> As discussed above, this Court finds that neither the FBI nor the CIA violated Privacy Act with respect to Braun's requested records. Accordingly, Braun is not entitled to any damages under the Privacy Act.

## IV. Conclusion

For the foregoing reasons, the Court will grant Defendants' Motion for Summary Judgment and deny Plaintiff's Motion for Summary Judgment. A separate Order will follow.

_____  
CHRISTOPHER R. COOPER  
United States District Judge

Date: <u>July 25, 2019</u>